IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEREK ALEXANDER ROBERTS, #187216 *
    Plaintiff
v.      * CIVIL ACTION NO. RDB-09-3010

GARY D. MAYNARD, et al. *
    Defendants.
               ***

## MEMORANDUM OPINION

Procedural History

Derek Alexander Roberts ("Roberts") was confined at the Western Correctional Institution ("WCI") at the time this case was filed.[1] This 42 U.S.C. § 1983 Complaint for damages and injunctive relief, filed with the Court on November 12, 2009, raised a failure-to-protect claim regarding Roberts's assignment to the WCI segregation tier and the publication of an alleged gang affiliation taped on the door of his cell. He claimed that he has no affiliation with the gang in question, the Black Gorilla Family ("BGF"), and the publication of the "gang profile" on his cell door put his life in danger from BGF's rival gangs and from BGF gang members themselves. ECF No. 1. In his Supplemental Complaint Roberts alleged that in November 22, 2009, he was released from segregation to the general population and housed on a unit designated for gang members. ECF No. 5. He stated that he complained to officers and was offered protective custody status, but the assignment process was not implemented. He asserted that his life is in danger while in general population and officials were wrongly treating him "like a gang member."

---

[1] According to the Department of Public Safety & Correctional Services Inmate Locator, Roberts is now confined at the Roxbury Correctional Institution.

Roberts filed amended complaints, naming additional parties who allegedly failed to properly investigate his safety claims and his affirmations of non-gang membership and have wrongfully profiled him as a gang member. ECF Nos. 19 & 30.

Counsel for the state was ordered to file an immediate response to address Roberts's custodial situation and all case management/security investigations into his assertions. ECF No. 3. After receipt of the response, the Court denied Roberts's request for injunctive relief, but required further response as to his claims for damages. ECF No. 16.

Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[2] ECF No. 37. Roberts has filed an Opposition and Motion for Supplemental Citation of Authority to his Opposition. ECF Nos. 39 & 42. In addition, subsequent to his filing of responsive pleadings, Roberts filed a Motion for Appointment of Counsel.[3] ECF No. 44. The case is ready for consideration and may be determined without oral hearing. *See* Local Rule 105.6. (D. Md. 2010).

## Standard of Review

Fed. R. Civ. P. 56(c) provides that:

---

[2] Service of process has not been effected upon Defendants Hendricks, Spivey, Coleman, Butler, and Hickey. Defendant Lucas filed an answer.

[3] Roberts was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(e) and previously denied the appointment of counsel without prejudice. ECF No. 8. The appointment of counsel may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in any particular case rests on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984); *abrogated on other grounds by Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). The existence of exceptional circumstances "[w]ill turn on the quality of two basic factors--the type and complexity of the case, and the abilities of the individuals." *Id*. Roberts has thus far shown the wherewithal to present his Complaints and pleadings. Further, the allegations in this case do not involve complicated issues for review. He has failed to show a particular need or exceptional circumstances which would require the assistance of a trained practitioner. Therefore, the Motion for the Appointment of Counsel shall be denied.

2

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Analysis

The briefing illustrates that Roberts entered WCI and, on October 20, 2009, was placed in an overflow unit, H.U. #5, which housed general population, as well as administrative segregation and

disciplinary segregation inmates. Tags were placed on disciplinary segregation inmates' cells to alert staff of security issues, including gang affiliation. This was done to ensure that rival gang members were not placed in the same cell and also would be kept separated during cell moves. Defendants claim that Roberts filed an Administrative Remedy Procedure ("ARP") grievance on or about November 12, 2009, regarding his safety on the segregation unit due to "gang profiling" and threats from rival gangs and BGF gang members. The ARP response acknowledged the placement of the gang information on the cell door and indicated that it was for both staff awareness and safety to prevent placing rival gang members together along with preventing the placement of those inmates who may be in danger from a gang in a cell with a known gang member. The ARP response also noted that Roberts had been moved to another housing unit. ECF No. 37. Indeed, the record reflects that on October 29, 2009, Roberts was moved to another WCI housing unit where the gang-affiliation tag affiliation was not utilized.

The practice of writing and publicizing gang profiles on cell doors in the WCI segregation unit was discontinued and terminated sometime in late December 2009. Nonetheless, as a result of this Complaint Roberts was placed on administrative segregation on December 2, 2009, while his claims were investigated. He was removed from that status due to his inability to substantiate his claims, his lack of cooperation, and his failure to provide information regarding enemies. Defendants claim that Roberts referenced no threats against him since the initial week of his WCI incarceration, related no incidences of confrontations with other inmates of any nature, and named no enemies. According to Defendants, the segregation H.U. #5 Unit record for Roberts' brief sojourn on that housing assignment indicated no unusual problems. They further note that as of April 21, 2010, Roberts had been housed in general population for approximately three and one-half months without incident.

Defendants affirm, through the Declarations of Case Management Specialist Winters, Major

4

Fountain, and Intelligence Officer Malloy, that according to intelligence, gathered in 2002 and 2003, Roberts is a validated BGF member who tried to recruit younger inmates at the Maryland Correctional Institution in Jessup to join the BGF and also attempted to orchestrate an assault on correctional officers. ECF No. 37. They further maintain that he met the criteria for BGF validation and once validated as a member of a security threat group, the designation follows him through his incarceration. Defendants state that there is a process that an inmate can utilize to renounce membership in a security threat group. The inmate must first answer a written questionnaire, then be monitored for a year, which would include observation and cell searches to determine whether the renunciation was credible. At that point the Intelligence Office could recommend that the inmate be removed from security threat group designation. *Id.*

In his Oppositions Roberts reiterates the factual claims raised in his original and Amended Complaints. He contends that there was insufficient evidence to designate him as a member of a gang and he was not given notice of such a designation. ECF Nos. 39 & 42. Roberts claims that the practice of publicizing gang profiles on WCI disciplinary segregation cell doors was not based on official written policy and was terminated because the policy was not authorized and was determined to be illegal and dangerous. He alleges that the investigation into his safety concerns arising out of this Complaint was "inaccurate, inconsistent, and fabricated" except for the fact that he did not know the "names of any gang members who made threats." Roberts contends that he has an inmate witness who will submit a sworn declaration that he heard gang members walk pass the tagged cell door and make threats based upon the gang-affiliated tag. ECF No. 39.

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious

5

harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must perceive the risk. *See Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id.* As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient. *See Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the inmate must show a serious physical injury. *See De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); *see also Babcock v. White*, 102 F.3d 267, 272-73 (7th Cir. 1996).

Roberts has been called upon to rebut Defendants' declarations and materials with his own verified documents to establish a genuine dispute of material fact. He has failed to do so. The undisputed facts show that Roberts was transferred to WCI in October of 2009 and placed in a disciplinary segregation cell on October 20, 2009. The tag placed on the outside of the door identified him as a BGF gang member based on a prior investigation which showed that he had accumulated sufficient points, under an established criteria, (*i.e.*, tattoos, observed association with known security threat group ("STG") members, and contact with known associates), to be deemed a member of a STG. Defendants state this designation stems from intelligence reports dating back to 2002 and 2003. Roberts continues to dispute the validity of the investigation related to that finding

and claims that he is not now, nor has he ever been, a member of an STG. His STG validation, however, remains in effect. More importantly, the record shows that Roberts was removed from disciplinary segregation, where the STG tag designation practice was in effect, on October 29, 2010. He suffered no physical injuries resulting from his nine-day stay on disciplinary segregation and there is no showing that he sustained injury from his later assignment to administrative segregation, (resulting from his filing of this Complaint), or upon his re-classification to general population. Moreover, the record demonstrates that WCI staff investigated and found that he could not substantiate his claims of enemies and threats. Roberts has failed to show Defendants were deliberately indifferent to his safety and that as a result he suffered physical injury.

The Court finds that Defendants Creek, Fountain, Galley, Hawk, Hughes, Ice, Malloy, Maynard, Morgan, Morris, Pennrod, Pope, Raley, and Stouffer are entitled to the entry of summary judgment. Finding no constitutional deprivation, the case against Defendants Smith, Hickey, Butler, Coleman, Spivey, Lucas and Hendricks will be dismissed. A separate Order follows.

Date: _November 3o,_ 2010.

_Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE